## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

LANDINGS ANIMAL HOSPITAL, INC.,
individually and as the representative of a
class of similarly-situated persons and
entities,

                                  No.

         Plaintiff,

      v.                                **CLASS ACTION**

VETERINARY STAFFING SOLUTIONS
LLC d/b/a INDEVETS,

         Defendant.

## CLASS ACTION COMPLAINT

Plaintiff, Landings Animal Hospital, Inc. ("Plaintiff"), through undersigned counsel, brings this action on behalf of itself and all other persons and entities that were sent unsolicited advertisements by facsimile transmission from defendant, Veterinary Staffing Solutions LLC doing business as IndeVets ("Defendant"), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the FCC's regulations prescribed under 47 U.S.C. § 227(b). Plaintiff makes the allegations based on personal knowledge with respect to facts known to Plaintiff and otherwise on information and belief after a reasonable investigation by counsel.

## PRELIMINARY STATEMENT

1.     On behalf of itself and a class of all others similarly situated, Plaintiff alleges claims and seeks statutory damages and other relief arising from Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2.     The TCPA prohibits sending any "unsolicited advertisement" to a

telephone facsimile machine. 47 U.S.C. § 227 (b)(1)(C).

3.    The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

4.    Attached as Exhibit A is a true and correct copy of a communication received on Plaintiff's fax machine on April 21, 2022.

5.    Exhibit A advertises the commercial availability or quality of Defendant's property, goods, or services. 47 U.S.C. § 227(a)(5).

6.    Defendant, or some other person or entity acting on Defendant's behalf, sent Exhibit A to Plaintiff's facsimile number, 440-933-3107.

7.    Defendant did not have Plaintiff's prior express invitation or permission to send Exhibit A to Plaintiff by facsimile transmission.

8.    Therefore, Defendant violated the TCPA.

9.    Plaintiff had no "established business relationship" ("EBR") with Defendant, but Exhibit A does not contain any opt-out notice, so Defendant cannot rely on the TCPA's EBR exception as a defense for sending unsolicited advertisements by facsimile transmission. 47 U.S.C. § 227(b)(1)(C)(i) and (iii); 47 C.F.R. § 64.1200(a)(4)(iii).

10.    The TCPA provides a private right of action and statutory damages of at least $500 per violation. 47 U.S.C. § 227(b)(3). If the advertiser knowingly or willfully violated the Act, the Court may increase the award to $1,500 per violation.

2

The Court may also grant injunctive relief.

11.     On behalf of itself and all others similarly situated, Plaintiff brings this action seeking statutory damages and other relief for each of Defendant's violations of the TCPA occurring within the four years before this action was commenced and continuing until the Court directs notice to the class.

## PARTIES, JURISDICTION, AND VENUE

12.     Plaintiff, Landings Animal Hospital, Inc., is an Ohio corporation operating a veterinary clinic and animal hospital in Avon Lake, Ohio.

13.     Defendant, Veterinary Staffing Solutions LLC d/b/a IndeVets, is a Delaware limited liability company with its principal place of business in Philadelphia, Pennsylvania. Defendant is registered to do business in Ohio. Its registered agent is Corporation Service Company, 1160 Dublin Rd, Ste 400, Columbus, OH 43215.

14.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

15.     Personal jurisdiction exists over Defendant in Ohio because it is registered to do business in the State, it transacts business in and makes or performs contracts substantially connected with the State, and because it committed tortious acts by causing the transmission of unlawful communications to Ohio residents, including Plaintiff.

16.     Venue is proper in the United States District Court for the Northern District of Ohio because Defendant committed statutory torts within this District,

and a significant portion of the events took place here.

## FACTS

17.     Founded in 2017, Defendant touts itself as "a leading veterinary relief company, providing credentialed vets who deliver the highest standard of care, seamlessly step into your workflow, and bring genuine accountability to your [veterinary clinic's] bottom line." https://indevets.com/for-hospitals/why-indevets/ (accessed 7/1/2025).

18.     As a business, Defendant provides veterinary staffing services to veterinary clinics and animal hospitals.

19.     Defendant operates in 38 states and claims to be "expanding to new states and regions every day...." https://indevets.com/what-is-indevets/where-we-practice/ (accessed 7/1/2025).

20.     Plaintiff operates a veterinary clinic and animal hospital in Avon Lake, Ohio.

21.     Plaintiff has received at least one unsolicited advertisement from Defendant by fax.

22.     On April 21, 2022, Plaintiff received an unsolicited advertisement about IndeVets' services on its fax machine. A true and correct copy of this fax is attached as Exhibit A.

23.     Exhibit A was sent by or on behalf of Defendant.

24.     The header of Exhibit A says that it is from "Purchasing Svcs" but prominently displays the service mark, "IndeVets," and directs recipients to a page

4

on Defendant's website, indevets.com/hospitals, where IndeVets' veterinary relief services are marketed and visitors are directed to fill out a contact form to become a hospital partner (i.e., purchase services from IndeVets).

25.     According to the United States Patent and Trademark Office, Defendant Veterinary Staffing Solutions LLC registered the service mark, "IndeVets" on May 16, 2023, and were given US Registration Number 7054382, for "[p]roviding professional staffing and recruiting services to the veterinary community."

26.     Exhibit A states, "Our team is ready to help you get started with IndeVets" and identifies various points of contact for Defendant, including phone number, email, address, and website.

27.     Exhibit A advertises the commercial availability or quality of property, goods, or services.

28.     Exhibit A advertises Defendant's staffing services by saying things like, "IndeVets provides relief services to your hospital," "IndeVets has you covered from head to tail," "Relief is spelled I-N-D-E-V-E-T-S," "Take the paperwork off your plate," "Scheduling made simple," and "Our team is ready to help you get started with IndeVets."

29.     Defendant did not have Plaintiff's prior express invitation or permission to send advertising material to Plaintiff's facsimile number.

30.     Plaintiff has no established business relationship with Defendant.

31.     Exhibit A does not contain any opt-out notice.

5

32.     Because Exhibit A contains no opt-out notice, any established business relationship between Defendant and any class member would be irrelevant to this action about unsolicited advertisements.

33.     Upon information and belief formed after reasonable investigation, Defendant sent faxes like Exhibit A to more than 40 persons or entities.

34.     Exhibit A is a form or template, it is not specifically addressed to any recipient, and it has no information about the intended recipient other than the fax number appearing in the header.

35.     Upon information and belief formed after reasonable investigation, Exhibit A was sent to a target list in bulk. Broadcast fax is a low-cost way to reach a large audience—far cheaper for the advertiser than direct mail, television, radio, telephone calls, and in-person visits (not accounting for the statutory damages available under the TCPA)—but illegal when the sender lacks prior express invitation or permission to fax advertising material.

36.     Unsolicited fax advertisements cause concrete harm to their recipients.

37.     Fax advertisers use the recipient's fax machine to receive and deliver the sender's advertising message. Fax machines are left on and ready to receive authorized messages. Fax machine users are a captive audience.

38.     A fax can be received only with special equipment connected to a 10-digit telephone number. Maintaining a working fax number and fax machine costs money. Every fax transmission traverses the regulated, public telephone lines. An unsolicited fax causes undue wear and tear on the receiving fax machine. During its

6

transmission, an unsolicited fax might prevent the receiving machine from sending or receiving an authorized fax.

39.    Every unsolicited fax imposes incremental, per-page costs on its recipients. If automatically printed upon receipt, as in the case of Plaintiff, an unsolicited fax transmission automatically uses and wastes the recipient's paper and ink toner. Printed or not, every unsolicited fax interrupts the recipient's privacy and seclusion, and wastes their valuable time, as somebody must view the sender's message to discern its source, purpose, or nature.

40.    Plaintiff and the other class members have no obligation to take affirmative steps to try to avoid or prevent Defendant's unlawful facsimiles. Their fax machines are ready to send or receive their own urgent, business, confidential, or private communications, not to receive Defendant's advertising material.

41.    For itself and each class member, Plaintiff seeks statutory, liquidated damages of at least $500 for each unsolicited advertisement sent by or on behalf of Defendant.

42.    The TCPA authorizes a person or entity to maintain an action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B).

43.    Plaintiff does not seek to recover for actual monetary loss from the TCPA violations.

## CLASS REPRESENTATION ALLEGATIONS

44.     Plaintiff brings this lawsuit as a class action on behalf of itself and all other similarly-situated persons and entities who were sent one or more unsolicited fax advertisements from Defendant on or after September 9, 2021.

45.     The proposed class is initially defined as follows:

> All persons and entities sent one or more facsimile transmissions regarding IndeVets' services on or after September 9, 2021, and containing no opt out notice.

46.     Excluded from the class are Defendant and its employees, officers, and directors, its legal representatives, heirs, successors, and assigns, and any judge assigned to this action, and his or her family.

47.     Plaintiff intends to discover the full scope of Defendant's fax advertising. *See* Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

48.     Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery.

49.     This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a). Additionally, prosecution of Plaintiff's claims separately from the class's claims would create a risk of inconsistent or varying adjudications under Rule 23(b)(1)(A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of

8

law or fact making class representation the superior method to adjudicate this controversy under Rule 23(b)(3).

## Numerosity/Impracticality of Joinder

50.     On information and belief, the class includes more than 40 persons and, thus, is so numerous that individual joinder of the members is impracticable.

51.     Exhibit A is a standardized form advertisement.

52.     The precise number of class members and their identities are unknown to Plaintiff but can be obtained from Defendant's records or the records of third parties.

## Ascertainability

53.     The proposed class is defined based on objective criteria, permitting class members to be identified.

54.     On information and belief, the members of the class may be identified from Defendant's records or the records of third parties.

## Commonality and Predominance

55.     There is a well-defined community of interest among the class members.

56.     Common questions of law and fact predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another and may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.      Whether Defendant sent facsimiles containing material advertising the commercial availability or quality of its property, goods, or services;

b.      Whether Defendant sent advertising material by fax without the prior express invitation or permission of the targeted recipients;

c.      Whether Defendant sent such faxes in broadcasts, and the manner and method used to obtain or compile the target list(s) for those broadcasts;

d.      Whether Defendant's facsimiles contained an opt-out notice that complied with the TCPA's requirements;

e.      Whether Defendant is directly or vicariously liable for violating the TCPA;

f.      Whether Plaintiff and the other class members should be awarded statutory damages;

g.      Whether Defendant sent the faxes knowingly or intentionally and, if so, whether the Court should treble the statutory damage awards;

h.      Whether Plaintiff and other members of the class are entitled to equitable relief, including but not limited to injunctive relief; and

      i.     Whether the Court should enjoin Defendant from sending unsolicited advertisements by facsimile in the future.

## Typicality of Claims

57.    Plaintiff's claims are typical of the claims of the other class members because all were injured by the same wrongful practices. Plaintiff and the members of the class received Defendant's unsolicited advertisements by facsimile. If Plaintiff prevails on its claims, then the putative class members will prevail as well.

## Adequacy of Representation

58.    Plaintiff is an adequate representative of the class. Plaintiff's interests do not conflict with the interests of the class. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

## Prosecution of Separate Claims
## Would Yield Inconsistent Results

59.    Common questions of fact and law predominate. Separate adjudication of class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendant to operate under if or when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendant chooses to advertise by fax again in the future.

**A Class Action is an Appropriate Method to**
**Adjudicate this Controversy Fairly and Efficiently**

60.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The likelihood of individual class members prosecuting separate claims is remote. Individual litigation would be economically unfeasible and procedurally impracticable. Individual litigation also would burden the court system. Relief concerning the rights of the entire class, including Plaintiff, would be proper. There is no other litigation pending regarding fax advertisements sent by Defendant. Plaintiff envisions no difficulty in the management of this case as a class action.

**COUNT I**

**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

61.    Plaintiff incorporates the preceding paragraphs as though fully alleged herein.

62.    Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons and entities.

63.    The TCPA provides in pertinent part as follows:

(b)    Restrictions on use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

\*\*\*

(C)    to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited

advertisement, unless–

> (i)      the unsolicited advertisement is from a sender with an established business relationship with the recipient;
>
> (ii)     the sender obtained the number of the telephone facsimile machine through–
>
> > (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or
> >
> > (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and
>
> (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or ….

U.S.C. § 227(b)(1)(C).

64.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

13

65.    The TCPA provides a "private right of action" as follows:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

66.    The opt-out notice on an unsolicited advertisement sent by fax must include "a domestic contact telephone and facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice ..." 47 U.S.C. § 227(b)(2)(D)(iv).

67.    "A notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if ... (v) the telephone and facsimile machine numbers and the cost-free mechanism ... permit an individual or business to make such a request at any time on any day of the week." 47 U.S.C. § 227(b)(2)(D)(v).

68.    In relevant part, the TCPA states that "[t]he [Federal Communications] Commission shall prescribe regulations to implement the requirements of this subsection ... in implementing the requirements of this subsection, the Commission shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if ... (i) the notice is clear and conspicuous ..." 47 U.S.C. § 227(b)(2)(D)(i).

69.    The FCC's regulations pertaining to opt-out notices on unsolicited advertisements are set forth at 47 C.F.R. § 64.1200(a)(4)(iii).

70.    Defendant violated subsection (b) of 47 U.S.C. § 227 or the FCC's regulations prescribed under that subsection by faxing unsolicited advertisements.

71.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a)(4).

72.    The facsimile received by Plaintiff and attached as Exhibit A advertises the commercial availability or quality of Defendant's property, goods, or services.

73.    Defendant sent advertisements like Exhibit A to Plaintiff and others by facsimile without obtaining their prior express invitation or permission to send advertising material to their fax machines.

74.    Plaintiff has no "established business relationship" with Defendant. 47 U.S.C. § 227(a)(2).

15

75.     Exhibit A does not have an opt-out notice.

76.     Plaintiff intends to discover and include within this action all unsolicited advertisements sent by fax by or on behalf of Defendant.

77.     Defendant violated the TCPA by sending advertisements to Plaintiff and others by facsimile transmission without their prior express invitation or permission and by failing to include opt-out notices on those fax advertisements (to the extent Defendant argues an established business relationship legally justified the faxes).

78.     Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients know how to prevent and avoid future fax transmissions of advertising material and to provide the various cost-free means Congress required. If senders do not clearly and conspicuously provide recipients with an opportunity to opt out, then those recipients are unreasonably forced to bear the burdens associated with this form of advertising.

79.     The TCPA is a strict liability statute, so Defendant is liable to Plaintiff and the other class members regardless of whether its actions were negligent or well-intentioned.

80.     Defendant is liable because it either sent the faxes, caused the faxes to be sent, or participated in the sending process. Further, the faxes were sent on Defendant's behalf, and Plaintiff alleges on information and belief formed after a

16

reasonable investigation that Defendant gave actual authority or ratified the unlawful conduct.

81.     Defendant knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendant or anybody else to send advertisements by facsimile transmission and that Defendant's faxes did not display an opt-out notice as required by the TCPA and did not make available the means Congress intended to make such an opt-out request.

82.     Defendant's actions caused harm. Defendant's unsolicited fax advertisement invaded each recipient's privacy and right to seclusion. Defendant's unsolicited faxes wasted the recipients' valuable time. Defendant's unsolicited faxes caused Plaintiff and others to lose paper and toner consumed in printing Defendant's faxes.

83.     Defendant's conduct in sending such unsolicited fax advertisements violated the TCPA, 47 U.S.C. § 227.

84.     Plaintiff does not seek to recover for actual monetary loss. Rather, for itself and every other member of the class, Plaintiff seeks an award of $500 in statutory damages for each of Defendant's violations of the TCPA.

85.     The Court, in its discretion, can treble the statutory damages if the violation was knowing or willful.

86.     Plaintiff requests trebling under 47 U.S.C. § 227(b)(3), if the Court finds Defendant's violations of the TCPA were knowing or willful.

87.    The Court also should enjoin Defendant from sending future unsolicited advertisements by fax without the prior express invitation or permission of the intended recipient or a compliant opt-out notice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in favor of itself and the entire class and against Defendant as follows:

a.    That the Court adjudge, find, and decree that this case may be maintained as a class action, certify a class, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

b.    That the conduct alleged herein be declared to be in violation of the TCPA;

c.    That the Court award $500.00 in statutory damages for each of Defendant's violations of the TCPA;

d.    That the Court treble the statutory damages if it concludes that Defendant 's violations were willful or knowing;

e.    That the Court enter an injunction prohibiting Defendant from sending advertisements by fax without first demonstrating that it has obtained prior express invitation or permission to send advertising material by fax transmission;

f.    That the Court enter judgment against Defendant and in favor of Plaintiff and the entire class;

g.      That the Court award to Plaintiff and the entire class the costs incurred in this lawsuit; and

h.      That the Court award all other relief allowed by law or equity that the Court deems just and proper.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all triable issues.

Respectfully submitted,

LANDINGS ANIMAL HOSPITAL, INC., individually and on behalf of all similarly-situated persons and entities,

By: /s/ Scott D. Simpkins
  One of their attorneys

Scott D. Simpkins (0066775)
ssimpkins@mggmlpa.com
Mansour Gavin, LPA
1001 Lakeside Avenue, Suite 1400
Cleveland, Ohio 44114
Telephone: (216) 523-1500
Facsimile: (216) 523-1705

Phillip A. Bock (*pro hac vice* to be applied for)
David M. Oppenheim (*pro hac vice* to be applied for)
CLASS LAWYERS, LLC
820 W Arthur Godfrey Rd # 305
Miami Beach, FL 33140
Telephone: 305-465-6501
Email: service@classlawyers.com